Filed 2/8/21  In re A.S. CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| In re A.S., a Person Coming Under the Juvenile Court Law. | C092620 |
| YOLO COUNTY HEALTH AND HUMAN SERVICES AGENCY,<br><br>        Plaintiff and Respondent,<br><br>    v.<br><br> B.N. et al.,<br><br>        Defendants and Appellants. | (Super. Ct. No. JV2019206) |

B.N. (mother) and A.S. (father), parents of the minor (parents), appeal from the juvenile court's orders denying father's petition to change the court's order terminating his reunification services and thereafter terminating parental rights, freeing the minor for adoption.  (Welf. & Inst. Code, §§ 366.26, 388, 395.)[1]  We will affirm the juvenile court's orders.

---

[1] Unspecified statutory references are to the Welfare and Institutions Code.

1

## I. BACKGROUND

*Prior Dependency Proceedings*

In 2016, the minor's half-sibling[2] was removed from mother's custody when mother and the child tested positive for methamphetamine at the time of the child's birth. Mother failed to engage in services and the juvenile court ultimately terminated her parental rights and freed the half-sibling for adoption. Thereafter, mother moved to Oregon where she lived with father and his then wife and began having a relationship with father.

In November 2018, Oregon Child Welfare Services opened an investigation following a report that mother tested positive for methamphetamine while eight months pregnant with the minor. Mother and the minor tested negative for substances at birth and mother continued to test negative causing the Oregon Child Welfare Services to close its referral on January 8, 2019. Later that month, mother and father relocated back to California.

*Current Dependency Proceedings*

On July 2, 2019, the Yolo County Health and Human Services Agency (Agency) filed a dependency petition on behalf of the minor pursuant to section 300, subdivision (b), alleging failure to protect due to the parents' inability to provide regular care for the minor due to the parents' respective history of substance abuse and chronic state of instability. It was alleged that mother failed to mitigate her long-standing substance abuse problems despite being offered reunification services following the removal of the minor's half-sibling, failed to submit to a drug test, tested positive for methamphetamine while pregnant with the minor, "experienced homelessness and chronic instability" for several years as a result of her substance abuse, and failed to concern herself with father's

---

[2] The minor's half-sibling was born to mother and father's son and is therefore technically father's grandson.

admitted regular use and sale of methamphetamine. It was also alleged that, on June 28, 2019, mother and father stated they would prefer to relinquish their parental rights over the minor rather than participate in drug testing, drug treatment, or Agency involvement. It was further alleged that father admitted having a longstanding issue with drug use despite having participated in several drug treatment programs. On June 27, 2019, father admitted using methamphetamine three to four times a week and further admitted having sold drugs in order to financially support and provide for the minor. It was also alleged that father "experienced homelessness and instability" since 2017 despite the availability of resources, and that father reported having mental health issues (depression and anxiety) which impeded his ability to safely parent the minor and for which he had not sought assistance or treatment.

The petition also alleged, pursuant to section 300, subdivision (j), substantial risk of abuse or neglect to the minor due to the prior abuse of the minor's half-sibling, mother's failure to participate in a myriad of services (including substance abuse treatment), and the ultimate termination of mother's parental rights and adoption of the half-sibling. The minor was detained pursuant to a protective custody warrant and placed with the same family who adopted his half-sibling.

On July 3, 2019, the juvenile court ordered the minor detained, reunification services for both parents, and supervised visitation.

The jurisdiction report filed July 22, 2019, stated father had not participated in any visitation with the minor since the minor's removal from his care on June 28, 2019. On July 24, 2019, the parents submitted on jurisdiction. The court sustained the allegations in the petition as amended to include an allegation as to father's history of using methamphetamine three to four times per week. The court adjudged the minor a dependent of the juvenile court and adopted the Agency's recommended findings and orders.

3

The August 2019 disposition report stated father had a lengthy history of substance abuse, had failed to engage in services for substance abuse treatment, and denied he had a substance abuse problem. The report reiterated father's previous statement that he would prefer to give up custody of the minor in order to avoid engaging in services and noted he had been inconsistent in visiting the minor since removal. On July 29, 2019, father acknowledged a history of drug use but claimed he had not provided a positive test and did not need substance abuse treatment. He indicated he would like to participate in parenting classes as well as an anger management program to address his anger issues resulting from having been in prison. It was also reported that, in late-June and early-July 2019, father tested positive for marijuana and/or amphetamine and methamphetamine three times and either declined to test or failed to show up to test three times.

The Agency recommended the court provide continued reunification services to father, but bypass mother for services pursuant to section 361.5, subdivisions (b)(10) and (b)(13). The Agency noted as follows: "It will be critical that the father participate in services, and that he be able to demonstrate stability in his housing and life style. He will need to be able to perform basic and essential parenting duties. He will need to identify and show consistency with having sufficient resources, such as food and shelter, to meet his child's needs. [Father] will need to demonstrate that he has been able to integrate the information/education and support he receives through services into behavioral change."

At the contested dispositional hearing on August 27, 2019, the court found the parents' participation in services was minimal, ordered continued services to father, bypassed services to mother, and ordered supervised visits for father but no visits for mother. Father's court-ordered case plan included general counseling, parenting education, outpatient substance abuse treatment, and substance abuse testing.

In its six-month status review report, the Agency recommended the court terminate father's reunification services and set the matter for a section 366.26 hearing.

4

The report stated father was arrested for possession of drug paraphernalia on December 9, 2019. Father was reportedly unemployed and transient. He failed to participate in any of his court-ordered services despite being offered and referred to those services. He refused to drug test and denied having substance abuse issues. He made himself unavailable to his service providers by not returning telephone calls and he failed to maintain contact with the Agency.

The report noted that father visited regularly with the minor. He reportedly engaged with the minor, changed the minor's soiled diapers, fed the minor, and brought the minor toys and clothes. However, the visitation supervisor during father's first two visits (in September 2019) noted that father's behaviors were consistent with someone who was a habitual user of controlled substances and felt that father may have been under the influence of controlled substances during the visits.

The Agency reported that father lacked insight into the pervasive issues that led to the Agency's involvement, was easily agitated when discussing the Agency's concerns about his substance abuse issues, and continued to deny he had substance abuse issues, claiming the minor should not have been removed from his care. Given father's lack of engagement and progress in his case plan, the Agency concluded it was unlikely father would reunify with the minor even if given additional reunification services.

On February 27, 2020, the court granted the foster parents' request for de facto parent status.

Neither parent was present for the contested six-month review hearing on March 16, 2020. The Agency requested the court terminate father's reunification services. Father's counsel requested continued services arguing that, while father "had a very late start in his services" and should have been further along than he was, father had recently been participating in services, including AA/NA and four sessions of anger management since February 19, 2020, and planned to begin outpatient treatment the following day and mental health counseling within the month. The Agency argued

5

father's late participation in services did not indicate a substantial probability of return of the minor within 12 months due to the fact that father had only attended two parenting classes for anger management, missed numerous drug tests and was still not drug testing, had been observed in November 2019 to have been under the influence during supervised visits with the minor, and had not yet engaged in counseling. The Agency further argued the minor, who was very young and needed permanency, was in a loving home with his half-sibling where the minor appeared to be comfortable and well cared for.

The court noted that while father had been consistently visiting the minor, his engagement in services was late and he was not drug testing, "which goes directly to one of the main reasons why the Court has taken jurisdiction is the father's substance abuse issues." Finding father made minimal progress in services and there was no substantial likelihood of successful reunification with the minor, the court terminated father's reunification services, reduced father's visitation with the minor, and set the matter for a section 366.26 hearing.

On July 22, 2020, father filed a petition pursuant to section 388 seeking to change the court's order and reinstate his reunification services. Father argued he had been actively engaged in an outpatient treatment program since May 28, 2020, was testing regularly, and was participating in individual and group sessions. He further argued he had secured permanent housing. Father argued the requested change was in the minor's best interest because father had consistently visited with the minor, even after termination of services, and was bonded with the minor.[3] Father's supporting documentation

---

[3] Mother also filed a section 388 petition seeking return of the minor or visitation and reunification services. The court summarily denied mother's request for failure to state new evidence or a change of circumstances or demonstrate that the requested change was in the minor's best interest.

included drug test results for five tests in June and July 2020, all of which were positive for marijuana but negative for other substances.

On July 28, 2020, the court denied father's request without a hearing for failure to state new evidence or a change of circumstances or demonstrate that the requested change was in the minor's best interest.

The section 366.26 report stated father maintained consistent visitation with the minor. The report concluded the minor was likely to be adopted, noting the de facto parents were willing and able to adopt the minor and provide for his needs. The adoption home study and preliminary evaluation showed the de facto parents were suitable and committed to adopting the minor. The Agency recommended the court adopt its findings and orders and terminate parental rights, freeing the minor for adoption.

Both parents appeared for the section 366.26 hearing on August 17, 2020. The court denied mother's request for a continuance. Father's counsel objected to termination of parental rights arguing father consistently visited and engaged with the minor, the minor would benefit from continuation of the parent-child relationship, and there was a section 366.26 hearing pending in a case involving the minor's sibling with whom the minor "would be able to continue that relationship." The Agency argued none of the exceptions to adoption applied, noting the minor had a very close bond with his half-sibling with whom he had been living and, in contrast, had never lived with his younger sibling who was born after he was removed. The Agency further noted that while father visited regularly, father and the minor did not have the sort of relationship that would outweigh the benefits of adoption. The court found the minor adoptable, terminated parental rights, and ordered adoption as the permanent plan.

## II. DISCUSSION

Father contends the juvenile court abused its discretion when it denied his section 388 petition to change the court's order without a hearing and reinstate his reunification

7

services.[4]  He claims the petition showed both a change in circumstances and that the requested modification would be in the minor's best interests.  The claim lacks merit.

A petition to change or modify a juvenile court order under section 388 must factually allege that there are changed circumstances or new evidence to justify the requested order, and that the requested order would serve the minors' best interests.  (*In re Daijah T.* (2000) 83 Cal.App.4th 666, 672; *In re Kimberly F.* (1997) 56 Cal.App.4th 519, 526.)  The petitioner has the burden of proof on both points by a preponderance of the evidence.  (*In re Casey D.* (1999) 70 Cal.App.4th 38, 48.)  In assessing the petition, the court may consider the entire history of the case.  (*In re Justice P.* (2004) 123 Cal.App.4th 181, 189.)

The child's best interests "are not to further delay permanency and stability in favor of rewarding" the parent for his or her "hard work and efforts to reunify."  (*In re J.C.* (2014) 226 Cal.App.4th 503, 527.)  " 'A petition which alleges merely changing circumstances and would mean delaying the selection of a permanent home for a child to see if a parent . . . might be able to reunify at some future point, does not promote stability for the child or the child's best interests.' "  (*In re Mary G.* (2007) 151 Cal.App.4th 184, 206; accord, *In re Casey D., supra,* 70 Cal.App.4th at p. 47.)  The petition must be liberally construed in favor of its sufficiency.  (Cal. Rules of Court, rule 5.570(a).)  Nonetheless, if the juvenile court finds that even so construed the petition fails to make a prima facie case as to either or both tests under section 388, the court may deny the petition without an evidentiary hearing.  (*In re Justice P., supra,* 123 Cal.App.4th at p. 189; *In re Jeremy W.* (1992) 3 Cal.App.4th 1407, 1413; *In re Zachary G.* (1999) 77 Cal.App.4th 799, 806; see Cal. Rules of Court, rule 5.570(d).)

---

[4] Mother's appellate brief joins in father's arguments but does not provide any argument or analysis and does not raise any other issues specific to her.

We review the denial of a section 388 petition for abuse of discretion. (*In re S.R.* (2009) 173 Cal.App.4th 864, 870; *In re J.T.* (2014) 228 Cal.App.4th 953, 965.)

Here, father's petition requested that the court reinstate his reunification services, alleging changed circumstances due to the fact that he had been actively engaged in an outpatient treatment program since May 28, 2020, was testing regularly, and was participating in individual and group sessions, and that he had secured permanent housing. Attached to father's petition was documentation confirming father was admitted to an outpatient substance abuse and recovery program on May 28, 2020, and was in stage two of four stages. The documentation showed father tested positive for marijuana on June 10, 15, and 23, 2020, and July 1 and 7, 2020, and that his results from tests on July 15 and 21, 2020, were still pending. Also attached was a document confirming father and mother secured permanent housing as of July 21, 2020. The petition also alleged the requested change was in the minor's best interest because father had consistently visited with the minor, even after termination of services, and was bonded with the minor.

Father argues he showed his circumstances had changed by demonstrating that, after his services were terminated, he began to actively engage in services on his own, including outpatient substance abuse and recovery, individual counseling, and drug testing. He argues that, while his drug tests were all positive for marijuana, none were positive for methamphetamine or amphetamine. Finally, he argues the fact that he secured permanent housing demonstrates he was serious about getting his life together and becoming a stable parent for the minor.

The record established that father's circumstances were, at best, changing. The minor was removed in early-July 2019 due in large part to father's admitted history of drug abuse and his June 2019 admission that he was using methamphetamine three to four times a week and had sold drugs in order to support the minor. In December 2019, father was arrested for possession of drug paraphernalia. As of February 2020, he had

9

reportedly failed to participate in any of his court-ordered services despite being offered and referred to those services, he refused to drug test and denied having substance abuse issues, and he made himself unavailable to his service providers and failed to maintain contact with the Agency. While he was maintaining consistent visitation with the minor, it was reported that his behavior during supervised visits in late-2019 was consistent with someone who was under the influence of illegal substances. He lacked insight into the pervasive issues that led to the Agency's involvement, was easily agitated when discussing concerns about his substance abuse issues, and continued to deny he had a substance abuse problem.

As of March 2020, father had attended just two parenting classes for anger management. He was participating in AA/NA, but he continued to refuse to drug test and had yet to begin outpatient drug treatment or mental health counseling. As a result, the court terminated father's reunification services.

While father claims he made "significant changes in his efforts to become drug free" and "had his drug problem under control," the record establishes his efforts, while laudable, were recent. As of July 2020, when he filed his section 388 petition, father had been engaged in outpatient treatment only two months and was still in the second stage—the "Preparation stage"—of the program. He was finally drug testing during June and July 2020 and tested negative for amphetamine and methamphetamine; however, he had only been testing for just over one month, two of his recent test results were still pending, and all of the completed tests were positive for marijuana. "After the termination of reunification services, the parents' interest in the care, custody and companionship of the child are no longer paramount. Rather, at this point 'the focus shifts to the needs of the child for permanency and stability.' " (*In re Stephanie M.* (1994) 7 Cal.4th 295, 317.) "A court hearing a motion for change of placement at this stage of the proceedings must recognize this shift of focus in determining the ultimate question before it, that is, the best interests of the child." (*Ibid.*) Given father's admitted extensive history of substance

abuse, his previous participation in numerous court-ordered substance abuse treatment programs, and his consistent and repeated denials about having a substance abuse problem at all, father's relatively recent engagement in services and the fact that he secured permanent housing demonstrated, at best, that his circumstances were changing. (See *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["Appellant's completion of a drug treatment program, at this late a date, though commendable, is not a substantial change of circumstances"].)

Because we conclude the court did not err in finding father failed to establish a change in circumstances, we need not review his contention that the requested change was in the minor's best interests.

Under these circumstances, father's petition did not establish a prima facie case requiring that the court set the matter for an evidentiary hearing. We conclude the juvenile court did not abuse its discretion in denying father's section 388 petition without a hearing.

### III. DISPOSITION

The juvenile court's orders are affirmed.


/S/

-----------------------

RENNER, J.


We concur:


/S/

-----------------------

BLEASE, Acting P. J.


/S/

-----------------------

HOCH, J.


11